UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

RALPH F. PORTO,

    Debtor.
_____/

RICHARD DELAURO,

    Plaintiff,

vs.

RALPH F. PORTO,

    Defendant.
_____/

Case No. 6:07-bk-00096-ABB
Chapter 7

Adv. Pro. No. 6:07-ap-00075-ABB

FILED
SEP 2 3 2008
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

## MEMORANDUM OPINION

This matter came before the Court on the Complaint Objecting to Entry of Debtor's Discharge (Doc. No. 1) ("Complaint") filed by Richard DeLauro, the Plaintiff herein ("Plaintiff"), against Ralph F. Porto, the Defendant and Debtor herein ("Debtor"), seeking a denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(5), and the Motion for Attorneys' Fees (Doc. No. 47) filed by the Debtor. Evidentiary hearings were held on March 27, 2008 and May 7, 2008 at which the Debtor, counsel for the Debtor, the Plaintiff, counsel for the Plaintiff, the Chapter 7 Trustee Carla P. Musselman ("Trustee"), and counsel for the Trustee appeared.

The parties were granted leave to conduct a post-hearing deposition of the Debtor's father, Pat Porto, and to file closing briefs. The Plaintiff conducted a deposition of Pat Porto on May 30, 2008 and submitted the deposition transcript with exhibits (Doc.

No. 57). The deposition transcript and exhibits are admitted into evidence. The parties filed closing briefs (Doc. Nos. 67, 68). The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## **FINDINGS OF FACT**

### *State Court Judgment*

The Plaintiff filed two claims in this case, Claim No. 1 as a general unsecured claim for $1,647,060.96 and Claim No. 15, which apparently amends Claim No. 1, for $1,637,208.75 for "personal injury," consisting of secured and priority unsecured portions. The Plaintiff's claim emanates from a Judgment entered by the Superior Court of New Jersey, Bergen County, Law Division, on January 14, 1985 ("Judgment") in Richard DeLauro v. Hair Internationale, Ltd., *et al.*, Docket No. L-26949-79, Calendar No. 80-0657, pursuant to a jury trial.[1]

Judgment for $725,000.00 was awarded in favor of the Plaintiff and against the Debtor and other defendants in varying percentages. The jury found the Debtor 4.5% liable and judgment of $162,076.65 was entered against him individually, consisting of the principal amount of $101,935.00 plus accrued interest of $60,141.65, with post-judgment interest to accrue at the legal rate.

The Judgment concludes with a provision granting the Debtor a right of contribution and seemingly inconsistent with the entry of judgment of 4.5% liability against the Debtor "individually":

---

[1] Plaintiff's Exh. No. 2.

2

> [I]n the event the plaintiff is able to recover monies from the other defendants, or from any other third party, in excess of [$725,000, together with accrued interest], that the defendant, Ralph A. Porto, shall be entitled to recover a proportionate share of those monies he paid in excess of the 4.5% of liability found by the jury, together with accrued interest.[2]

The Plaintiff revived the Judgment pursuant to an Amended Order Reviving Judgment entered by the New Jersey State Court on July 14, 2003.[3] The Plaintiff issued execution on the revived Judgment and a statewide lien was entered in New Jersey in favor of the Plaintiff on August 2, 2003.

Correction of the Revived Judgment was sought to remedy various errors and the New Jersey State Court entered an Order for Corrected Revived Judgment on October 11, 2006 finding the Revived Judgment should have renewed the terms of the $725,000.00 Judgment, striking any terms of the Revived Judgment inconsistent with the Judgment, and clarifying the Judgment of $725,000.00 was a joint and several judgment pursuant to New Jersey state law:

> The Revived Judgment as renewed shall allow Plaintiff to collect the full amount of the molded verdict from any one Defendant, including Defendant Ralph Porto, and in turn, Defendant Ralph Porto shall have the right to collect any amount over his 4.5% jury verdict amount from his Co-Defendants named in the Original Judgment.[4]

Sandra M. Porto, the Debtor's former wife, and L-Falls Realty LLC are named as defendants in the Order for Corrected Revived Judgment and appear to have been added as defendants subsequent to entry of the original Judgment.

The Debtor and Sandra Porto were divorced on October 25, 2004 pursuant to a divorce decree entered by the New Jersey State Court. They executed a Property

---

[2] Id.
[3] Plaintiff's Exh. No. 3.
[4] The Order for Corrected Revived Judgment was not presented as an exhibit. A copy is attached to Claim Nos. 1 and 15. The Court takes judicial notice of the Order.

3

Settlement Agreement post-divorce on February 9, 2005, which, among other things, provides for the equitable distribution of their assets.[5] They were represented by separate counsel in the divorce proceedings. Extensive investigation of the Debtor's assets and financial affairs was conducted by Sandra Porto in connection with the divorce proceeding and by the Plaintiff in connection with the Judgment.

### *Debtor's Bankruptcy Case*

The Debtor filed this individual Chapter 7 case on March 16, 2007 ("Petition Date"). He listed one parcel of real property, 3 White Oak Lane, Montville, New Jersey ("White Oak Property"), as an asset in Schedule A and various items of personal property as assets in Schedule B:

- (i) Cash valued at $100.00;
- (ii) SunTrust account valued at $193.78;
- (iii) Furniture and household goods valued at $1,750.00;
- (iv) Clothing valued at $100.00;
- (v) Ring, watch, glasses valued at $121.00;
- (vi) Hobby and sports equipment valued at $5.00;
- (vii) Potential claims against the Judgment co-defendants having an unknown value;
- (viii) Potential claim against the law firm of Cooper Levenson April Niedelman & Wagenheim having an unknown value; and
- (ix) Potential claim against an insurance company relating to dental work having an unknown value.

(Doc. No. 1). The Debtor claimed exemptions in the cash, furniture, and SunTrust Bank account in Schedule C (Id.). The exemption claims were unopposed.

---

[5] Plaintiff's Exh. No. 88.

4

The Debtor listed no secured creditors in Schedule D, unsecured priority claims of $30,763.72 for taxes in Schedule E, and general unsecured claims of $7,523,442.38 in Schedule F (Id.). The largest claims are the Plaintiff's and the claim of Rechyam, LLC, Claim No. 9, for $5,241,464.70. The Rechyam claim relates to a New Jersey State Court judgment entered in favor of Midlantic Bank and against the Debtor on February 28, 1993 in the principal amount of $3,336,824.00 plus post-judgment interest as the result of a business loan default. Midlantic Bank assigned the judgment to PNC Bank for $50,000.00 and PNC assigned it to Rechyam.

The Trustee declared this case an asset case and sold the White Oak Property generating gross sale proceeds of $477,777.77, with cost of sale of $28,666.62 (Main Case Doc. Nos. 41, 43, 44). The sale was unopposed. The Debtor has cooperated with the Trustee throughout his Chapter 7 proceedings. The Debtor's cased is ready for a final report and closing.

No objections to the Debtor's bankruptcy filing have been made. The Plaintiff is the only party instituting an adversary proceeding against the Debtor and has challenged the Debtor's discharge. The Debtor has complied with all of the Plaintiff's discovery requests including extensive document production and a deposition. The sole remaining matter in the Debtor's bankruptcy case is this adversary proceeding.

### *Plaintiff's Complaint*

The Plaintiff's Complaint sets forth one alleged basis for denial of discharge—Section 727(a)(5) of the Bankruptcy Code. The Plaintiff contends the Debtor should be denied a discharge based on his failure to satisfactorily explain the "loss" of his "assets" between the entry of the Judgment and the Petition Date—a period spanning twenty-three

years. He pled no other grounds for denial of discharge and pled no Section 523 nondischargeability allegations.

The Plaintiff strayed far beyond the Complaint in his trial presentation and post-hearing brief. His evidence and argument relate minimally to Section 727(a)(5) and mainly to other Bankruptcy Code and state law provisions that are inapplicable to this adversary proceeding because such provisions were not pled in the Complaint. The Plaintiff's post-hearing brief contains Section 523(a)(4), 523(a)(5), and 523(a)(6) nondischargeability allegations and Section 727(a)(2) and 727(a)(4) asset concealment, asset transfer, and false oath allegations.

The Plaintiff did not seek to amend his Complaint by written or *ore tenus* motion to include such allegations. All requests for relief beyond the Section 727(a)(5) count contained in the Complaint are due to be denied.

The Debtor's testimony was credible and is supported by the historical event chronology and the documentary evidence.

### *"Loss" Allegations*

The Plaintiff has the initial burden to establish the Debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors. The Debtor, if the initial burden is met, must satisfactorily explain the loss. The length of time between the known existence of an asset and its loss is relevant in a Section 727(a)(5) analysis.

The Plaintiff's Complaint is a cacophony of disparate allegations. Some of the allegations relate to the elements of Section 727(a)(5), but most have no relevance to a Section 727(a)(5) cause of action.

*Income and Expenses:* The Debtor has been involved in a number of businesses over the years and has been a self-employed consultant for nine years. He listed monthly gross income of $1,628.00 and net income of $1,628.00 in Schedule I as of the Petition Date (Main Case Doc. No. 1). He listed monthly expenses of $3,483.25 in Schedule J, resulting in negative monthly net income of $1,855.25 (Id.). He listed in his Statement of Financial Affairs annual income of $88,697.00 for 2005 and $42,843.00 for 2006 (Id.).

The Plaintiff alleges the difference in the Debtor's monthly income versus his expenses constitutes a "discrepancy" and questions the accuracy of the Debtor's income disclosures in his Statement of Financial Affairs.

The Plaintiff's questioning of the accuracy of the Debtor's income and expense disclosures does not relate to Section 727(a)(5), but relates to a discharge challenge based on Section 727(a)(4), which addresses false oaths and accounts. The Plaintiff did not seek a denial of discharge pursuant to 727(a)(4) and any false oath contentions are not relevant.

A Chapter 7 debtor's post-petition earnings do not constitute property of the estate. The Debtor's income does not constitute an asset and is not relevant to a Section 727(a)(5) discharge determination. The difference between the Debtor's monthly income and expenditures does not involve the loss of an asset.

The Plaintiff has failed to establish its initial burden the Debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors.

*American Express Payments:* The Debtor disclosed in his Statement of Financial Affairs he made three pre-petition payments to American Express: (i) $735.89 on December 14, 2006; (ii) $1,352.26 on January 17, 2007; and (iii) $561.57 on February 9,

2007. The Plaintiff questions in Paragraph 15 of its Complaint how the Debtor, "based upon the amounts shown in his Schedules," "could afford to pay $1,352.26 to American Express" on January 17, 2006.

Paragraph 15, to the extent it constitutes a Section 727(a)(5) allegation and is not mere speculation or observation, requires leaps of logic. It assumes: the $1,352.26 American Express payment was made with cash assets; that if such payment was not made the cash would have existed on the Petition Date; the cash would have constituted property of the estate; and the cash would have been available for distribution to the Debtor's creditors.

The Debtor did not fully expend his allowable exemptions in Schedule C and, to the extent he had cash assets of $1,352.26 on the Petition Date, he could have claimed them as exempt. The Plaintiff failed to establish its initial burden the payment of $1,352.26 to American Express created a loss of assets that would have been available to distribution to the Debtor's creditors.

*Assets v. Liabilities:* The Plaintiff questions "how or why" the Debtor incurred his "significant amount" of scheduled unsecured debt (Complaint at ¶16). Such questioning does not relate to a 727(a)(5) cause of action, but relates to the integrity of the Debtor's bankruptcy filing and his disclosures, which is not at issue in this proceeding.

The origins of the Debtor's debts are apparent from the Schedules and filed claims. The vast majority of the Debtor's prepetition debt consists of two claims, *the Plaintiff's* and the claim arising from the Midlantic Bank judgment. The remaining claims consist of attorneys' fees from pre-petition litigation, a claim by Sandra Porto

relating to the Property Settlement Agreement, old business liabilities, and typical consumer debts.

The Plaintiff alleges the Debtor's significant debts relative to his insignificant assets reflects "diversion of assets to third parties" (Complaint at ¶17). The extensive investigations of the Debtor conducted by his ex-wife, who engaged a forensic accountant, and by the Plaintiff in connection with execution of its Judgment did not unearth any hidden or diverted assets. The Plaintiff has not identified in this proceeding any specific assets that have been hidden or wrongfully diverted.

The Plaintiff has not established the Debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors. The Plaintiff has not established its initial burden pursuant to Section 727(a)(5).

***White Oak Property:*** The Plaintiff alleges the Debtor and Sandra Porto owned the White Oak Property as tenants in common on the Petition Date and the Plaintiff was entitled to possession of the Debtor's interest. The Debtor's interest in the White Oak Property constituted non-exempt property of the estate on the Petition Date. The Trustee sold the White Oak Property through an unopposed sale. The Debtor's interest in the White Oak Property was not lost, but was liquidated by the Trustee pursuant to her statutory duties and the proceeds of sale will be distributed to the Debtor's creditors.

There has been no "loss" associated with the White Oak Property. The Plaintiff has failed to establish its initial burden pursuant to Section 727(a)(5).

***Monmouth Beach Property:*** The Debtor and Sandra Porto jointly owned real property located at 106 Wharfside Drive, Monmouth Beach, New Jersey ("Monmouth Beach Property"). Sandra Porto was granted sole ownership of the Monmouth Beach

9

Property prepetition pursuant to the Property Settlement Agreement.[6] The Debtor's interest in this former joint asset was not inexplicably lost; it was transferred to Sandra Porto in the divorce proceeding.

The Plaintiff alleges the Debtor transferred the Monmouth Beach Property to Sandra Porto "with the actual intent to hinder, delay, and defraud Plaintiff from collecting his just claim against the Defendant." (Complaint at ¶31). The Plaintiff's allegation does not relate to a 727(a)(5) cause of action, but to a fraudulent transfer recovery cause of action. The Plaintiff has failed to establish its initial burden pursuant to Section 727(a)(5).

***L-Falls Realty, LLC:*** The Plaintiff alleges the Debtor had an interest in L-Falls Realty, LLC and orchestrated real estate purchases through the company. The Members of the LLC are Lori Fall, the Debtor's daughter, and Fredrick Wynne, a third party with no relation to the Debtor.[7] The Plaintiff did not establish the Debtor ever held an ownership interest in the LLC. The Plaintiff did not establish the Debtor ever held an ownership interest in any of the LLC's assets or real estate transactions.

The Plaintiff alleges the LLC engaged in a property conveyance "made with the actual intent to hinder, delay, and defraud the Plaintiff from collecting his just claim against the Defendant debtor." (Complaint at ¶36). He alleges the Debtor "used L-Falls as a shield to hide income and assets as part of an ongoing scheme to defraud Plaintiff."

The Plaintiff's allegations do not relate to a 727(a)(5) cause of action, but to a fraudulent transfer recovery cause of action, which was not pled by the Plaintiff. The Plaintiff has failed to establish its initial burden pursuant to Section 727(a)(5).

---

[6] Plaintiff's Exh. No. 88.
[7] Plaintiff's Exh. Nos. 37, 41.

***Deposition of Debtor's Father:***  The Plaintiff, post-trial, deposed Pat Porto, who is ninety years old and has diminished mental faculties.  The Plaintiff's questions focused on Pat Porto's bank transactions, which Pat Porto had difficulty answering due to memory loss.  Pat Porto stated from time to time he made loans to the Debtor, which the Debtor repaid, and paid some of the Debtor's legal fees.

The Plaintiff, it appears, is attempting to establish Pat Porto transferred funds to the Debtor, which the Debtor did not disclose in his bankruptcy papers, and deposits made into Pat Porto's account constitute undisclosed property of the Debtor.  The Plaintiff states in its closing brief:  "The mysterious nature of these deposits [is] indicative of the fact that the Bankruptcy Petition is far from an accurate disclosure of [the Debtor's] financial position."

The deposition of Pat Porto has no relevance to the Plaintiff's Complaint.  It was nothing more than a fishing expedition by the Plaintiff.

### *Conclusion*

The Plaintiff has been pursuing the Debtor for more than twenty-three years and his Complaint is a final attempt to get his proverbial "pound of flesh" from the Debtor.  The Plaintiff's Complaint, trial presentation, and post-hearing submissions consist of conjecture and have no factual or legal substance relating to Section 727(a)(5).

The Plaintiff failed to identify any substantial, identifiable assets the Debtor allegedly once owned, which are now unavailable for distribution to the Debtor's creditors.  The Plaintiff has not met his initial burden pursuant to Section 727(a)(5).  The Plaintiff has failed to establish a basis for denial of the Debtor's discharge.

### *Motion for Attorney's Fees*

The Debtor is beleaguered by the Plaintiff's pursuit of him, which has delayed the closure of his bankruptcy case. The Debtor seeks an award of attorney's fees and costs incurred in this adversary proceeding. He bases his request on Florida Statute Section 57.105(1) and Section 105 of the Bankruptcy Code.

Litigants are responsible for their legal costs pursuant to the "American Rule" except where an award of costs is provided for by an enforceable contract or statute. Florida Statute Section 57.105(1), which has been applied in bankruptcy proceedings, provides for the award of reasonable attorney's fees to a prevailing party where the losing party or its attorney knew or should have known its claim lacked factual or legal merit. A Bankruptcy Court is empowered by Section 105 of the Bankruptcy Code to impose sanctions for bad faith conduct, unreasonable and vexatious litigation, and Federal Rule of Bankruptcy Procedure 9011 violations.

The Plaintiff's allegations have no factual or legal merit. He knew or should have known his Complaint has no factual or legal basis. This adversary proceeding was not brought in good faith and constitutes unreasonable, vexatious litigation. The Debtor's Motion is due to be granted pursuant to Florida Statute Section 57.105(1) and Section 105(a) of the Bankruptcy Code. The Debtor's reasonable attorney's fees incurred in this proceeding, plus prejudgment interest, are due to be awarded in favor of the Debtor and against the Plaintiff.

## **CONCLUSIONS OF LAW**

The Plaintiff seeks denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(5). The Complaint is narrowly drafted pleading 11 U.S.C. Section 727(a)(5) as the sole cause of action and contains no other bases for denial of discharge pursuant to Section 727(a) or allegations of nondischargeability of the Judgment pursuant to Section 523(a).

The Plaintiff did not seek to amend its Complaint pursuant to Federal Rule of Bankruptcy Procedure 7015 by written or *ore tenus* motion. All requests for relief beyond the Section 727(a)(5) count contained in the Complaint are due to be denied.

Section 727(a) of the Bankruptcy Code sets forth a debtor shall be granted a discharge unless certain abuses have been committed by the debtor. A discharge will be denied where:

> the debtor has failed to explain satisfactorily, before determination of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5) (2007).

Objections to discharge are to be strictly construed against the objecting party and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986). "[T]he reasons for denying a discharge must be real and substantial, not merely technical and conjectural." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994).

A party seeking denial of discharge pursuant to Section 727(a)(5) has the initial burden of establishing its objection to discharge. Hawley v. Cement Indus., Inc. (In re Hawley), 51 F.3d 246, 249 (11th Cir. 1995). The creditor, to sustain the initial burden,

must establish "the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors." Murphy v. Rivertree Landing, LLC (In re Murphy), Case No. 6:08-cv-198-Orl-31, 2008 WL 2224835 *5 (M.D. Fla. May 27, 2008). The time of the formerly owned substantial, identifiable asset cannot be "too remote in time to the date of the commencement of the case." In re Walden, 380 B.R. 883, 894 (Bankr. M.D. Fla. 2008). The burden then shifts to the debtor to satisfactorily explain the loss. In re Hawley, 51 F.3d at 249.

Whether a debtor has satisfactorily explained a loss of assets is a finding of fact. Id. at 248. "To be satisfactory, an explanation must convince the judge . . . . Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." Chalik v. Moorefield (In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984) (*internal citations omitted*).

The Plaintiff did not establish its initial burden as to any of its alleged "asset losses." The Debtor's income does not constitute property of the estate pursuant to 11 U.S.C. Section 541(a)(6). The difference between his monthly income and expenses cannot form a basis for a Section 727(a)(5) action because no asset loss is involved.

The Plaintiff did not establish the payment of $1,352.26 to American Express constituted an asset loss. The funds used to pay American Express may not have existed on the Petition Date and, if they did, could have been claimed as exempt pursuant to Florida statutory and constitutional provisions.

The Debtor's Schedules set forth the nature of his debts, and are substantiated by the claims filed. The Plaintiff's allegations regarding the sufficiency or accuracy of the

Debtor's disclosures in his Schedules and Statement of Financial Affairs are irrelevant in that they do not relate to a Section 727(a)(5) cause of action.

The Plaintiff's allegations of asset diversions are wholly unsubstantiated and are not pled as Section 727(a)(5) causes of action. The Debtor's interests in the White Oak Property and the Monmouth Property cannot constitute lost assets pursuant to Section 727(a)(5). His interest in the White Oak Property constituted non-exempt property of the estate pursuant to 11 U.S.C. Section 541(a), which the Trustee sold pursuant to Section 704(a) and the proceeds of sale will be distributed pursuant to Section 726. The Debtor's interest in the Monmouth Property was transferred to Sandra Porto in the divorce proceeding and cannot constitute a "lost asset."

The Plaintiff did not establish the Debtor had an interest in L-Falls, LLC or any of its assets or property transactions. The Plaintiff's deposition of Pat Porto had no relevance to a Section 727(a)(5) dischargeability action.

The Plaintiff has not met its initial burden pursuant to Section 727(a)(5). He has not established the Debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors. The Debtor is entitled to a discharge.

### *Debtor's Motion for Attorneys' Fees*

A litigant may recover attorney's fees and costs only where such an award is provided for by enforceable contract or statute. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975). Section 727 of the Bankruptcy Code, unlike Section 523(d), does not contain a provision for the recovery of attorney's fees and costs by a prevailing litigant.

Florida Statute Section 57.105(1) cited by the Debtor as a basis for the recovery of fees and costs provides:

> (1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
>
> (a)   Was not supported by the material facts necessary to establish the claim or defense; or
>
> (b)   Would not be supported by the application of then-existing law to those material facts.
>
> However, the losing party's attorney is not personally responsible if he or she has acted in good faith, based on the representations of his or her client as to the existence of those material facts. If the court awards attorney's fees to a claimant pursuant to this subsection, the court shall also award prejudgment interest.

FLA. STAT. § 57.105(1) (1999). A Bankruptcy Court may award sanctions pursuant to Section 57.105(1) in an adversary proceeding. In re Wille, 333 B.R. 891, 893 (Bankr. M.D. Fla. 2005).

The Debtor cites 11 U.S.C. Section 105(a) as additional support for his Motion. A Bankruptcy Court, pursuant to Section 105, "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It empowers a Bankruptcy Court to sanction wrongful conduct. Hardy v. U.S. (In re Hardy), 97 F.3d 1384, 1389 (11th Cir. 1996). A Bankruptcy Court may invoke its statutory powers of Section 105(a) to redress Federal Rule of Bankruptcy Procedure 9011 violations, bad faith, and unreasonable, vexatious litigation. In re Clark, 223 F.3d 859, 864 (8th Cir. 2000).

The Complaint lacks factual and legal merit. The Plaintiff knew or should have known prior to trial his claims lack factual and legal merit. The Plaintiff did not bring this action in good faith, but brought it to harass the Debtor and delay his bankruptcy case.

The Debtor is entitled to an award of his reasonable attorney's fees, plus prejudgment interest, pursuant to Fla. Stat. Section 57.105(1) and 11 U.S.C. Section 105(a). The Debtor's Motion is due to be granted. A separate judgment awarding the Debtor his attorney's fees and against the Plaintiff shall be entered upon the submission by the Debtor of a fee and cost statement.

Accordingly, it is hereby

**ORDERED, ADJUDGED and DECREED** that any and all relief sought by the Plaintiff beyond the 11 U.S.C. Section 727(a)(5) count of its Complaint is hereby denied; and it is further

**ORDERED, ADJUDGED and DECREED** that the Debtor's Motion (Doc. No. 47) for an award of fees and costs is hereby **GRANTED** and the Debtor is directed to file and serve on the Plaintiff within seven (7) days of the entry of this Order a detailed statement setting forth the attorney's fees and costs he has incurred in this adversary proceeding.

A separate judgment in favor of the Debtor and against the Plaintiff consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 23rd day of September, 2008.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge